## PennDOT v. McFadden

8

■■■■■■■■■■■■■■■■■■■■■■

*Richelle D. Sanders, assistant counsel,* for the commonwealth.

*Frank J. Marcone,* for defendant.

WRIGHT, *J.,* August 10, 1988—This case comes before the court pursuant to a petition for appeal of a license suspension. A notice of license suspension was issued by the Commonwealth of Pennsylvania, Department of Transportation, effective March 29, 1988, to John P. McFadden for his alleged refusal to submit to a breathalyzer test in conformity with the implied consent law. 75 Pa. C.S. § 1547. Testimony and argument were heard on May 16, 1988.

On January 1, 1988, Officer Glatts of the Aston Township Police Department stopped appellant to investigate the possible involvement of appellant's motor vehicle in an accident earlier that evening between a police car and a truck. Officer Glatts, himself, did not witness the accident but received a report of the accident and a description of the vehicle involved, a "dark truck," over his car radio. Appellant was operating a brown truck when stopped by Officer Glatts.

Officer Glatts observed appellant's truck moving forward and backward, 20 to 30 feet in each direc-

tion, five or six times. The movement of appellant's truck took place entirely within the boundaries of a private parking area. The parking area contained space enough for four vehicles and it is intended to be used by four specifically designated tenants of the Aston Court apartments or their guests. One of these spaces is used by appellant's brother, a tenant in the Aston Court apartments, with whom appellant was visiting.. The parking area is bordered by lawns on three sides. The purpose of this parking area, as testified to by Officer Glatts, is to serve as an area in which to park a motor vehicle; the area is not intended for vehicular travel nor is it able to accommodate such travel. We had the benefit of two photographs depiciting the area in question. A reasonable conclusion is that the area is for the private use of specific tenants of, the Aston Court apartments.

There is further testimony by Officer Henry that Aston Court is part of a larger development known as Aston Village, consisting of the apartments and two roads, Thomas and Aston Court. According to the uncontradicted testimony of Officer Henry, both of these roads are dedicated highways or township maintained streets. Although counsel for both parties attached some significance to this fact, it is non-determinative and, in fact, irrelevant to issues before the court. All evidence presented indicates that Officer Glatts did not see appellant's truck leave the parking area. Appellant testified (and his brother's testimony confirmed) that his intention, when moving his truck, was to allow his brother's neighbor access to her parking space, not to enter onto one of these township roads.

The testimony for the commonwealth regarding appellant's alleged refusal to submit to a breathalyzer test and the driving under the influence (DUI) charge is antithetical to that of appel-

lant's. Appellant denies that he was asked to take a breath test and, therefore, argues that he could not have refused to submit to such a test. Appellant also denies that he was arrested for DUI. On the other hand, the police officers testifed that appellant was arrested for DUI and that he was requested to take a test, but refused to do so. We need not consider the contradictory testimony concerning the DUI charge, however, as our later discussion will indicate.

The principal issue in this case is whether a driver operating a motor vehicle on a private parking area can be required to submit to a chemical test. A determination on this issue requires statutory construction of sections 1547 and 3731 of the Pennsylvania Motor Vehicle Code. 75 Pa. C.S. §§1547 and 3731. Section 1547 provides for chemical testing to determine blood alcohol content. There is no express requirement in section 1547(a) that a driver must be operating his/her vehicle on a highway, trafficway, or any specified place in order for a chemical test to be administered. However, section 1547(b)(i), Suspension for Refusal, provides in part:

"If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, . . . the department shall suspend the operating privilege of the person for a period of 12 months." 75 Pa. C.S. §1547(b)(i).

Consequently, section 1547 defines itself in relation to section 3731. Section 1547 is dependent upon section 3731 for purpose and effect.

Accordingly, a proper interpretation of section 1547 requires an analysis of its interaction with section 3731. Section 3101 of the Vehicle Code states:

"The provisions of Subchapter B of Chapter 37 [of which section 3731 is a part] . . . shall apply upon highways and trafficways throughout this commonwealth." 75 Pa. C.S. §3101(b).

Therefore, a violation of section 3731 must occur on a "highway" or "trafficway". A logical conclusion, following from the earlier discussion of section 1547, is that a police officer may request a breathalyzer test of a driver only if the driver operates his motor vehicle on a "highway" or a "trafficway". As was indicated in the facts, appellant was not driving on a highway when stopped by Officer Glatts and is not an issue.

The determinative question, then, can be stated thus: Does the parking area, upon which appellant wa operating his truck when stopped by Officer Glatts, constitute a "trafficway" as that term is defined in section 102 of the Vehicle Code? "Trafficway" is defined as:

"The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." 75 Pa. C.S. §102.

The significant elements of a trafficway are that it is (1) open to the general pulic; and (2) intended for vehicular travel. In *Commonwealth v. Boughman,* 357 Pa. Super. 535, 516 A.2d 390 (1986), appellant-motorist was operating his motor vehicle on a dirt track through a field which was open to the public and occasionally used for vehicular traffic. Accepting this description of the "way" upon which appellant was operating his vehicle, the Pennsylvania Superior Court found all the elements of a trafficway satisfied and affirmed the lower court's conviction for DUI. The Court of Common Pleas for Lancaster County, in *Commonwealth v. Bresnock,* 19 D.&C.

3d 327 (1981), concluded that the privately owned parking lot to a restaurant/tavern, which accommodated between 30-35 vehicles and contained three combined entrances and exits, was a trafficway. The *Bresnock* court reasoned that parking lots customarily, ". . . are open to the public for the purpose of vehicular traffice to the extent of patronizing the establishment." 19 D.&C. 3d at 331. See *Commonwealth v. Williams*, 36 D.&C. 3d 106, 108 (1985) (citing *Bresnock*).

Consistent with these rulings, *Commonwealth v. Bendik,* 112 Pa. Commw. 591, 535 A.2d 1249 (1988), in which appellant was arrested for DUI after causing an accident on a motel parking lot, holds:

"It would appear from the use of a motel parking lot that it is customarily open to the public for the purpose of vehicular travel to the extent that members of the general public . . . wish . . . to and patronize the motel . . ." 535 A.2d at 1250.

The commonwealth, in lieu of submitting a brief, cites *Bendik* as the sole support for its argument that the parking area involved in the present case constitutes a trafficway. *Bendik,* however, does not expand the definition of trafficway to include a private residential parking area, an inference the commonwealth apparently wishes this court to draw. To the contrary, *Bendik* is consistent with earlier cases construing the term "trafficway". Underlying the *Bendik* opinion, as well as the other opinions cited supra, is a "quasi-public nature" analysis. The essence of this argument is that even a privately owned way may constitute a trafficway as long as its customary purpose is to serve a segment of the general public. A motel parking lot (*Bendik*), a restaurant/tavern parking lot (*Bresnock*), a dirt track through a public field (*Boughman*), are con-

sidered trafficways because each serves a quasi-public function.

The parking area at the Aston Court apartments, however, serves no public function. A private residential parking area is not, as a matter of custom or right, open to the general public for the purpose of vehicular travel. As a tenant in the Aston Court apartments, appellant's brother is entitled to a private parking space provided to his duplex. Each area can accommodate four vehicles and each of these four spaces is specifically assigned to a tenant. A proper conclusion is that continual and exclusive access to a portion of the area in question is expected by each tenant as a consideration for renting at Aston Court. This area, therefore, is not open to the general public and is not a trafficway as that term is defined in section 102 of the Vehicle Code.

The conclusion in this case is easily reconciled with the opinions cited above. The analysis of this opinion is the same only its conclusion is different. We do not today expand or restirct the definition of a "trafficway". The central question in these cases is the same: Does the area upon which the appellant-driver operated his vehicle constitute a trafficway? The answer is necessarily dictated by the facts of the individual case. As discussed supra, the nature of the area here involved is distinguishable from the "ways" involved in the cited cases. If it is the intention of the Pennsylvania legislature to protect citizens of the commonwealth from intoxicated drivers in this and all scenarios, then it should amend the statute to clearly provide so. For example, "Twenty [state] statutes, including the Uniform Vehicle Code, make it unlawful to drive while under the influence either 'within' . . . [the state, 'in' the state, or 'anywhere'] . . . in the state." 1 R Erwin, *Defenses of*

*Drunk Driving cases* no. 1.03(1) (3d ed. 1988). New Jersey's drunk driving statute is silent on the question of place of the offense and, consequently, has been construed as broadly as those statutes making it an offense to drive under the influence "anywhere" in the state. *Id.* at no. 1.03(4).

Since we have decided this case upon the issue of whether a private residential parking area constitutes a trafficway, we need not dispose of the contested DUI arrest issue. The DUI charge does warrant a brief discussion, however. Assuming the testimony of Officers Glatts and Henry to be true, that appellant was arrested for DUI, the arrest was improper. Section 3731 (relating to DUI of alcohol or controlled substance) applies only to "highways" and "trafficways". Given our conclusion that the Aston Court area in question is neither a highway nor a trafficway, section 3731 could not have been violated. Appellant could not have properly been placed under arrest for DUI because he did not violate section 3731. *Commonwealth v. Nazzaro,* 112 Pa. Commw. 543, 535 A.2d 761 (1988), states:

"To meet its burden of proving a valid suspension under section 1547, DOT must prove (1) that the driver was placed under arrest for DUI, . . ." 535 A.2d at 762.

Appellant was not operating his truck on a highway or trafficway. Consequently, a breathalyzer test was improperly requested. A refusal of a breathalyzer test under these circumstances cannot result in a suspension under section 1547(b)(1). The *Nazzaro* opinion is, of course, consistent with this court's construction of section 1547.

We therefore make the following

### ORDER

And now, this August 10, 1988, the rule to show cause why the appeal from the suspension of John

P. McFadden's driver's license should not be sustained is hereby made absolute.

The Commonwealth of Pennsylvania, Department of Transportation is hereby ordered to reinstate John P. McFadden's motor vehicle driving privileges.

It is so ordered.